Patricia HARAHAN, Admx. of the Estate of Bernard Harahan, Deceased, and Patricia Harahan, in Her Own Right, Appellant

v.

AC & S, INC., Allied Signal, Inc., SUCC. in Interest to Bendix Corp., Anchor Packing Co., Inc., A.P. Green Refractories Co., A.P. Green Services, Inc., Armstrong World Industries, Inc., Asbestos Claims Management Corp. f/k/a National Gypsum Co., A.W. Chesterton, Inc., Belmont Packing Co., Benjamin Foster, Division of Amchem Products, Inc., William Betz, Jr., Inc., Bigelow Liptak, SUCC. in Interest to Bigelow Liptak of Michigan, Bondex Int'l, Inc., Certain Teed Corp., Crane Packing Co., Crouse Hinds, Inc., M.H. Detrick Co., Fibreboard Corp., Flexitallic Gasket Co., Flintkote Co., Foster Wheeler Corp., GAF Corp., Garlock, Inc, General Electric Co., General Motors Co., General Refractories, Georgia Pacific Corp., Green Tweed & Co., Inc., Hajoca Plumbing Co., Hercules Chemical Co., Inc., Herman Goldner Co., Inc., John Crane, Inc., Mobil Oil Corp., North American Refractories Co., Owens Corning, Pecora Corp., Pneumo Abex Corp., Riley Stoker Corp., Rite Hose & Packing, SUCC. to Bevco Industries, Rockbestos Co., Sexauer Mfg. Co., U.S. Gypsum Co., U.S. Mineral Products Co., Victor Products, Westinghouse Elec. Corp., Walter B. Gallagher Co., Weil McClain, W.R. Grace

Superior Court of Pennsylvania.

Submitted Oct. 7, 2002.
Filed Jan. 23, 2003.

Benjamin P. Shein, Philadelphia, for appellant.

Robert B. Lawler, Philadelphia, for appellee.

Before DEL SOLE, P.J., and TODD * and OLSZEWSKI, JJ.

## OPINION BY OLSZEWSKI, J.:

¶ 1 This started as a suit against four dozen defendants, but this is an appeal to the grant of summary judgment in favor of just one—Amchem Products, Inc. ("Amchem"), on behalf of the Benjamin Foster Division of Amchem. For the following reasons, we reverse and remand.

¶ 2 Appellant is the administratrix of the estate of her late husband and was substituted as a party after his death. In her first amended complaint, she alleged that her husband worked as a pipefitter in PECO facilities between 1972 and 2000, that he was exposed to asbestos-containing products during that time, and that a mesothelioma caused by his asbestos exposure caused his death in 2000.

¶ 3 As a threshold matter, we must consider the jurisdictional matter of whether this appeal is from a final order. *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 650 (Pa.Super.2002). An appeal may be taken only from a final order, which is any order that disposes of all claims and all parties. Pa.R.A.P. 341(a). As in *Gutteridge*, a number of defendants survived the grant of summary judgment, and so it would seem that the order was not final. However, the court below subsequently entered an order that these cases were "settled, discontinued, and ended." Order, 5/3/02. "A trial court order declaring a case settled as to all remaining parties renders prior grants of summary judgment final for Rule 341 purposes, even if the prior orders entered disposed of fewer than all claims against all parties." *Gutteridge*, at 650. Therefore, the grant of summary judgment is a final order for appeal purposes, and we may address whether the ruling was correct.

¶ 4 Our scope of review is plenary, and this Court "will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion." *Gutteridge*, at 651. Further:

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to

---

* Judge Todd did not participate in the consideration or decision of this case.

judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

*Id.* (citations omitted).

¶ 5 In its 1925(a) opinion, the trial court explains that it granted Amchen's motion for summary judgment because appellant failed to meet the asbestos-related claim requirements of *Eckenrod v. GAF Corp.,* 375 Pa.Super. 187, 544 A.2d 50 (1988). The court relied solely on deposition testimony to reach its conclusion that appellant offered no evidence that Amchem's complained-of materials, Lagtone and Black Cat, created particulate asbestos that was inhaled by the decedent.

¶ 6 The deposition testimony at the center of this appeal was given by decedent's co-workers. James Szwajkowski and Stephen Dennett.[2] By way of background, they testified that Lagtone and Black Cat are sealants for pipe insulation and boilers that were a thick liquid when applied. Appellee Motion for Summary Judgment, 1/22/02, Exhibit E ("Motion Deposition") at 72, 76. The trial judge examined the evidence against each product separately, and so shall we.

¶ 7 The court found that it was uncontradicted that Lagtone could not create dust until it dried, but that, once it dried on the applicant's clothing or tools, removal of the product resulted in "pure dust ... [t]here was no way to escape it." Opinion at 3 (quoting Szwajkowski Deposition, 1/11/02, at 592). The court also quoted Mr. Szwajkowski's testimony that, the decedent was "no further than an arm's length away." *Id.* Upon examination of that portion of the deposition transcript, we see that this characterization was in answer to the question, "How close were you and [the decedent] to dust that was created by the use of Lagtone?" Motion Deposition at 592.

¶ 8 The deponent further testified that "Lagtone was used everywhere." Motion Deposition at 396. He knew that the product contained asbestos because "[i]t said asbestos on the cans of Lagtone." *Id.* He testified that the dried Lagtone created dust:

Q: Did this type of—did this insulation coating ever create any kind of dust of any type that you could see?

A: Well, yeah, once it dried and we cleaned it up or once it dried on the product; plus, whatever you got on your clothes eventually dried, and then you had it on you, you had it on your work shoes.

Motion Deposition at 79; *see also id.* at 591. He also testified that he and decedent both breathed that dust:

Q: Did you and [the decedent] breathe dust from the Lagtone product?

Mr. Kueny: Objection

A: Yes, we did.

Q: And how frequently did you breathe this dust?

A: On a regular basis, because Lagtone was used all over the system. It was on all the piping, insulation. It was everywhere.

Motion Deposition at 592. We note that, while there was an objection to the first question, the purpose was not preserved. In addition, no trial ruling was made on the objection. There is no reason, then, not to consider the answer. *Graham v. Today's Spirit,* 503 Pa. 52, 468 A.2d 454, 458, n. 4 (1983).

**2.** Their depositions were not made part of the record. However, where necessary, we will cite to portions that were attached to appellee's motion for summary judgment.

¶ 9 The deponent provided further circumstantial evidence that the decedent breathed the dust because he testified that they either did not wear a mask, or that it was insufficient to provide protection against it:

Q: [D]uring the time period that you worked with Mr. Harahan, '72 to '78, did you guys ever use any kind of mask or a paper cover over your nose or mouth for any of the jobs you did?

A: I don't remember. There were probably times in the boiler gang where we may have used masks when they were kind of blowing stuff out of the inside of the furnaces or whatever. They had paper masks at the time, but to the best of my knowledge, they weren't any good for—they weren't any good anything [sic]. The masks basically kept this part of your face clean (indicating), but there was no—it was no real sealant.

Q: It would cover your nose and your mouth?

A: That's all it did is it covered, but to the best of my knowledge, it did not provide any respiratory protection.

Motion Deposition at 73–74.

¶ 10 The court below relied on our decision in *Eckenrod,* in which we stated that "a plaintiff must establish more than the presence of asbestos in the workplace," 544 A.2d at 52, for the proposition that the deponent's testimony provided no more than speculation that the dust that the decedent may have inhaled was from dried Lagtone. A more thorough reading of that case, and others, is required.

¶ 11 There, the manufacturer's motion for summary judgment was granted for lack of product identification. We affirmed, holding:

In order for liability to attach in a products liability action, plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier. Additionally, in order for a plaintiff to defeat a motion for summary judgment, a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product. Therefore, a plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use. Summary judgment is proper when the plaintiff has failed to establish that the defendants' products were the cause of plaintiff's injury.

*Id.* (citations omitted).

¶ 12 This case is distinguishable from *Eckenrod.* There, we upheld the grant of summary judgment in favor of the manufacturer on the basis that there was no evidence "as to the regularity or nature of decedent's contact with asbestos." *Eckenrod,* at 53. Further, there was "not even a reasonable inference that appellant was exposed to appellees' asbestos products." *Id.* Conversely, this deponent provided evidence to support the inference that the decedent breathed Lagtone dust, and even testified that he breathed it on a "regular basis."

¶ 13 This deposition testimony here presents circumstantial and direct evidence to show that there is a genuine issue of material fact as to whether appellee's product caused decedent's disease. *See McNeal v. Eaton Corp.,* 806 A.2d 899, 904–05 (Pa.Super.2002); *Gutteridge,* at 653; *Eckenrod,* at 53. Whether or not this evidence would convince a jury is a question for the factfinder and not the trial court as an arbiter of the law. *Gutteridge,* at 651–52. Viewing the record in the light most favorable to appellant, and resolving all doubts as to the existence of a genuine

issue of material fact against appellee, we believe that the deposition testimony provides evidence that the decedent worked in the vicinity of Lagtone dust that contained asbestos, and that he inhaled it.

¶ 14 The trial court then turned to Black Cat. Here, it examined the testimony of both deponents, and again reached the conclusion that there was no evidence that the decedent inhaled asbestos from the dried material. Again, we disagree.

¶ 15 The court quoted Mr. Dennett's deposition:

Q: Would the use of that product create any kind of dust that you could see?

A: In putting it on, no, it would not create any dust putting it on. However, if you got it all over yourself, your tools, your equipment . . . and once it dries, it creates dust cleaning it. If I had to remove it when I went back to do a more formal repair of the crack, it would create dust.

Opinion at 5 (quoting Dennett Deposition at 44). The court below was of the opinion that this testimony indicated only "the *possibility* that dried Black Cat could create dust." Opinion at 5 (emphasis in original). Rather, we think that it is evidence enough that Black Cat did create dust when removed while dry. This point is further reinforced by the deposition testimony of Mr. Szwajkowski, quoted by the court, that Black Cat "would get on our clothes, and then when you would wash your clothes, and they would come out, and then the stuff would start flaking off, and you would have dust all over." Opinion at 6 (quoting Szwajkowski Deposition, 1/11/02, at 73).

¶ 16 The court also quoted the following exchange from Mr. Szwajkowski's deposition:

Q: And do you recall specifically where it was that you first used Black Cat, as opposed to the other sealers that you talked about?

A: No, I don't recollect where the first location was that I used it with Mr. Harahan, no. . . .

Q: Do you specifically recall when it was that you used Black Cat, as opposed to other sealers?

A: The sealers were used interchangeably at times. It was all overlapping. . . .

Q: Could you recall when it was you used Black Cat, as opposed to other brands?

A: Somewhere Between The Time Of 1972 And 1978.

Opinion at 7 (quoting Szwajkowski Deposition, 1/11/02, at 394–95). The court found that appellant failed to establish product identification on the basis that "no evidence [was] available that could prove that Black Cat Roofing cement was ever specifically used by Mr. Harahan, or that he was exposed to Black Cat Roofing cement when it was used by Mr. Szwajkowski on a regular and frequent basis. . . ." Opinion at 7.

¶ 17 We are provided with only excerpts from the depositions as attachments to various motions in the record; but there is also an exhibit that states, "Asbestos Products . . . which [the decedent] and I used all the time from 1972 to 1981 at PECO," and lists Black Cat roofing cement. This document was signed by Mr. Dennett and attached to Georgia–Pacific's Motion for Summary Judgment. We think that the statement in this exhibit that Mr. Harahan used Black Cat "all the time," coupled with Mr. Dennett's testimony as to its dusting qualities, provides evidence of a genuine issue of material fact as to whether appellee's product caused decedent's disease.

¶ 18 When it moved for summary judgment, appellee based its entire Black Cat argument on the lack of evidence that it was responsible for that product. Initially, we note that there is some evidence that it was. Exhibit F of Appellee's Motion for Summary Judgment [3] indicates that it acquired Benjamin Foster in 1969. It alleges that the Black Cat product was not part of the acquisition. Motion for Summary Judgment, 1/22/02. After reviewing the materials appellee attached to its Motion, it is apparent to us that the question has not been answered.

■ ¶ 19 Finally, appellee raises waiver against appellant with regards to the Black Cat ruling. Appellant's motion for reconsideration of the grant of summary judgment did not address Black Cat, only Lagtone. It is for this reason that appellee argues that appellant has waived this issue here, on the basis that it was not raised in the trial court. Since a motion for reconsideration is not procedurally required before appealing a grant of summary judgment, no waiver issue can attach when such a motion is filed.

¶ 20 In sum, we believe that the record materials discussed above demonstrate that there is a genuine issue of material fact that exists as to the decedent's inhalation of asbestos-containing dust from dried Lagtone and Black Cat. The grant of summary judgment in favor of appellee was legal error and an abuse of discretion.

¶ 21 Therefore, the order of the court is REVERSED and this case is REMANDED for further proceedings. Jurisdiction is relinquished.

---

**3.** The Philadelphia Prothonotary inadvertently inserted a court order between the Motion and its exhibits. However, the Motion identified the content of Exhibit F with particularity, and so we are comfortable attributing it to Amchen.