**Craft v. General Electric Co.**

364

*Lee B. Balefsky* and *Charles L. Becker,* for plaintiff.
*Scott R. Kipnis* and *David L. Birch,* for defendants.

TERESHKO, *J.,* March 22, 2010—Plaintiff Mary Craft, executrix of the estate of Robert Craft (decedent), appeals this court's order granting summary judgment to defendant, General Electric Company (GE), dismiss-

ing all claims against defendant. For the following reasons, this court's order should be affirmed.

## I. BACKGROUND

Decedent Robert Craft worked as an electrician for approximately 40 years with International Brotherhood of Electrical Workers Local 98, in addition to the approximately three-years time he spent as an Electrician's Mate in the US Navy. (Short form complaint ¶4.) As a member of Local 98, he worked for the Harry F. Ortlip Contracting Company at various sites. (Plaintiff's answers to defendants' general interrogatories—set I, exhibit E.) As an electrician with Ortlip, decedent admits to using asbestos paint, asbestos tape and asbestos cement at various worksites. (*Id.*) Decedent also identified some of the asbestos products that he previously worked with and their manufacturers names: asbestos block (Foster-Wheeler), asbestos cement (General Electric), asbestos insulating putty (Georgia-Pacific), asbestos pipecovering (Gould Pumps), asbestos spray (Westinghouse) and asbestos tape and wiring (manufacturer not listed). (*Id.*, exhibit A.) Decedent acknowledges that there were further asbestos products that he was exposed to that he could not recall. (*Id.*)

Decedent recalled some, but not all, of the work sites that he was exposed while working for Ortlip. (*Id.*, exhibit G.) Some of the work sites that he identified were: Arco Refinery, 30th Street Station, PECO Substation and Curtis Publishing Building. (*Id.*) During his tenure as an electrician, Mr. Craft admittedly encountered asbestos-containing products on numerous occasions. (Craft deposition, pp. 51, 54-55, 58-59, 67, 76-77, 80-81.)

Around September 29, 2005, Mr. Craft was diagnosed with malignant mesothelioma by Dr. Daniel Woody. Plaintiff commenced this asbestos mass tort action on January 3, 2006, alleging that decedent contracted mesothelioma as a result of his occupational exposure to asbestos products. (Short form complaint ¶¶4, 5.) (Report of Daniel DuPont D.O., p. 2.) The plaintiff specifically alleged that the decedent was exposed to asbestos products that were manufactured by defendants Melrath Gasket Inc., A.W. Chesterton Inc., Westinghouse Electric Company, Foster-Wheeler Corporation, General Electric Company, Metropolitian Life Insurance Company, Owens-Illinois Glass Company, Uniroyal Inc., Gould Pumps, IMO Industries, Georgia-Pacific Corporation, Rapid American Corporation and Garlock Incorporated. (Complaint, pp. 1-2.) Decedent passed away on March 2, 2007. *Id.* at 3. According to Dr. DuPont, the cause of decedent's death was mesothelioma. *Id.* at 3.

By order dated Sept. 24, 2007, this court granted summary judgment and subsequently dismissed defendants Garlock Inc., Gould Pumps Inc., IMO Industries Inc., and Melrath Gasket Inc. Plaintiff did not file an appeal from this court's granting of summary judgment as to these defendants.

On October 14, 2008, GE moved for summary judgment, arguing that plaintiff failed to establish that decedent's mesothelioma was caused by exposure to products manufactured or supplied by GE which allegedly contained asbestos. On November 7, 2008, plaintiff filed a response to the motion for summary judgment. Plaintiff claims that GE is liable to plaintiff based on two separate

and distinct actions for recovery—premises liability and products liability.[1] (Plaintiff's response to GE's motion for summary judgment, p. 1.) Plaintiff's products liability claim alleges that decedent was exposed to asbestos-containing GE wires, motors, and breakers while working as an electrician and foreman for the Harry F. Ortlip Company. *Id.* at p. 1.

GE filed a reply on November 12, 2008. After review of the motion, response, and reply this court granted summary judgment in favor of GE on December 4, 2008, dismissing plaintiff's claims against it.

On December 5, 2008, the remaining eight defendants entered into a settlement agreement resolving plaintiff's complaint against them.

On December 19, 2008, plaintiff timely filed an appeal from this court's order granting summary judgment for the defendant. On February 16, 2009, plaintiff filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), raising, inter alia, the following for our review:

"Whether this court committed an error of law or abused its discretion in finding that the plaintiff has failed to offer sufficient evidence that Mr. Craft was exposed to asbestos products manufactured by GE on a regular,

---

1. Plaintiff attempted to amend her complaint to add a premises liability claim. However, by order dated October 16, 2007 this court prohibited plaintiff from adding such a claim. Plaintiff has not filed an appeal as to this order, nor have they specifically raised this as an issue in their statement of errors. Therefore, is opinion does not contain any analysis addressing a premises liability theory.

frequent and proximate basis." (Plaintiff's concise statements of errors complained of on appeal, 2/16/09.)

## II. DISCUSSION

"In determining whether to grant a motion for summary judgment, the trial court must view the record in the light most favorable to the non-moving party and resolve any doubts as to the existence of a genuine issue of material fact against the moving party." *Gilbert v. Monsey Products Company,* 861 A.2d 275, 276 (Pa. Super. 2004). In reviewing a grant of summary judgment, an appellate court's scope of review is plenary and the court "will reverse only upon finding that the trial court abused its discretion or erred as a matter of law." *Id.* (citing *Harahan v. AC & S Inc.,* 816 A.2d 296 (Pa. Super. 2003)).

Plaintiff complains on appeal that this court's granting of summary judgment in favor of GE was error. However, the record in this matter fails to establish that decedent inhaled asbestos fibers from products manufactured and/or supplied by GE with the regularity, frequency, and proximity required under Pennsylvania law.

Our Superior Court, in *Eckenrod v. GAF Corporation,* 375 Pa. Super. 187, 544 A.2d 50 (1988), set forth the elements necessary to prove a prima facie case of products liability dealing specifically with asbestos:

"In order for liability to attach in a products liability action, plaintiff must establish that the injuries were caused by a product of the particular manufacturer or

supplier. Additionally, in order for a plaintiff to defeat a motion for summary judgment, a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product. Therefore, a plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use. Summary judgment is proper when the plaintiff has failed to establish that the defendants' products were the cause of the plaintiff's injury." *Id.* at 190-91, 544 A.2d at 52. (internal citations omitted)

Further, our Supreme Court in *Gregg v. V-J Auto Parts Company,* 596 Pa. 274, 943 A.2d 216 (2007) reiterated a lower court's standard of review examining an asbestos-related motion for summary judgment based on product identification: "[w]e believe that it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in light of the evidence concerning *frequency, regularity,* and *proximity* of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury." *Id.* at 292, 943 A.2d at 227. (emphasis added)

GE moved for summary judgment on the basis that plaintiff could not establish as a matter of law that any alleged exposure to a GE product caused decedent's injuries. (GE's motion for summary judgment 8/17/07, p. 8.) GE argued that plaintiff failed to establish decedent's alleged exposure to asbestos dust "manufactured, distributed or supplied by GE on a regular, frequent, or proximate basis." *Id.* at 7.

The discovery and videotape depositions of decedent were conducted on June 27, 2006. The decedent did not identify any GE products during his deposition as contributing to his 40 years of asbestos exposure; however he admitted he encountered various asbestos containing products on numerous occasions. (Craft deposition, pp. 51, 54-55, 58-59, 67, 76-77, 80-81.)

Plaintiff was forced to base her products liability claim on the testimony of decedent's co-worker, John Byrne. (Plaintiff's response, p. 8.) Byrne worked with decedent as an apprentice during a five-year period from 1956 until 1961. (Byrne deposition, p. 15.) Byrne unequivocally testified that decedent worked with GE motors, wires, and breakers at points during his career.

Byrne's testimony that decedent worked with GE motors, breakers, and wires, nevertheless fails to establish whether decedent was ever exposed to asbestos dust specifically from these products. *Id.* at pp. 70, 86.

With regard to the motors, Byrne recalled decedent working on GE motors, but could not definitively state whether any of the GE motors decedent worked with contained asbestos:

"Q: Do you know whether Mr. Craft was exposed to asbestos from either his work with or his work around GE motors?

"A: I wouldn't know that." *Id.* at 70.

Byrne further testified that decedent worked around breakers and switches that allegedly contained asbestos. (*Id.* at pp. 84-85.) However, Byrne stated that the asbestos was "sealed" in the breakers and decedent would only

have been exposed to the asbestos from breakers if the breakers exploded. *Id.* at p. 84.

Byrne could only assert that breaker explosions occurred "periodically," suggesting that it was not a common event and did not rise to the level of frequency required by the *Eckenrod* and *Gregg* tests. *Id.* at p. 86. Furthermore, no evidence exists to suggest that any of the breakers that exploded or switches were manufactured by GE:

"Q: As we sit here today, are you able to tell me the manufacturer of the breakers that exploded that Mr. Craft—

"A: No.

"Q: Do you know if GE manufactured any of the switches that Mr. Craft worked with or around?

"A: I have no idea which ones went bad." *Id.* at 86.

The plaintiff also fails to establish decedent's exposure to asbestos from GE wires with sufficient frequency, regularity, and proximity. *Id.* at p. 82; *Gregg,* at 292, 943 A.2d at 227. Although Byrne believed that the decedent used both asbestos- and non-asbestos-containing wires that were manufactured by GE, he could not identify a specific location where he recalled seeing decedent work with asbestos-containing wire manufactured by GE. (Byrne deposition, pp. 71-83.)

Byrne also testified that decedent was exposed to insulation when stripping wires:

"Q: And when you took off the insulation, how did you take it off?

"A: With a knife. You skinned it with a knife and you just throw it on the floor.

"Q: Did you use your bare hands or did you wear gloves?

"A: Usually bare hands . . .

"Q: Would any of the insulation get on your hands?

"A: I'm sure it did you know." (Byrne deposition, 7/31/07 at 117-18.)

Though evidence may establish that decedent was exposed to insulation from wires, Byrne's testimony fails to establish any indication that the wires decedent worked with were insulated with asbestos, as opposed to those insulated with fiberglass:

"Q: And when you say the three inches, three inches of what did you strip off?

"A: It was insulation . . . . Some of it was fiberglass, some was asbestos. You know, we didn't know everything that was on it." *Id.* at 117.

Although he alleges that some GE wires contained asbestos, Byrne cannot recall whether he ever saw any GE wires specifically marked as having such:

"Q: The asbestos wire that you associate with GE, did that have a trade name?

"A: I don't know if it did." *Id.* at 71.

"Q: Do you recall whether the word 'asbestos' appeared on any [GE wire] reels?

"A: I have no idea if it did." *Id.* at 82.

Neither decedent nor Byrne testified regarding the frequency with which decedent was exposed to asbestos from GE wires. Byrne not only fails to identify how often decedent used asbestos-containing GE wires, but also fails to identify a single job

"Q: Do you know if he used any GE wire on [the Lankenau Hospital] job?

"A: I'm not sure." *Id.* at 72.

"Q: Do you recall who manufactured the wire used at the Bell Telephone Glenolden job?

"A: No." *Id.* at 77.

"Q: Are you able to tell me, as you sit here today, who the manufacturer of that wire was on [the Children's Hospital building] job?

"A: No." *Id.* at 78.

Under Pennsylvania law, evidence of the possibility of exposure to asbestos dust without additional evidence that such exposure occurred with sufficient frequency, regularity, and in proximity to a defendant's identifiable product is simply insufficient to withstand summary judgment. *Gregg,* at 279, 943 A.2d at 219. Byrne's testimony never definitively establishes specific instances during which the decedent was exposed to asbestos dust from GE wires.

Plaintiff argues that testimony from her expert witness should be accepted as proof that even de minimis exposure to GE products could have been responsible for decedent's mesothelioma. (DuPont report, p. 4.) Plain-

tiff's expert, Dr. Daniel C. DuPont, opines that "each and every breath of asbestos inhaled during the employment history described would have been substantial in the causation of this condition." *Id.* at p. 4. However, our Supreme Court has held that "it is common for plaintiffs to submit expert affidavits attesting that any exposure to asbestos, no matter how minimal, is a substantial contributing factor . . . [yet] such generalized opinions do not suffice to create a jury question in a case where exposure to the defendant's product is de minimis . . . ." *Gregg,* at 291, 943 A.2d at 226. Accordingly, this evidence also fails to establish GE's liability. The decedent admitted to exposure to asbestos while in the Navy from 1942 to 1946. (Exhibit "E" of plaintiffs' answers to defendant's general interrogatories.) He also identified exposure to many other asbestos-containing products during his work as an electrician from 1948 to 1987. (Short form complaint ¶4; plaintiffs' answers to defendant's general interrogatories, exhibit A, G; Craft deposition, pp. 51, 54-55, 58-59, 67, 76-77, 80-81.) Not only did the plaintiff identify numerous possible sources that he recalls may have exposed him to asbestos, he admits that there are further asbestos products that he has used or had been exposed to that he does not recall. (Plaintiffs' answers to defendant's general interrogatories, exhibit A, G; Craft deposition, pp. 51, 54-55, 58-59, 67, 76-77, 80-81.)

Our Supreme Court has recognized that de minimis exposure to asbestos from GE products cannot create a jury question "particularly in the absence of evidence excluding other possible sources of exposure (or in the

face of evidence of substantial exposure from other sources.)" *Gregg,* at 291, 943 A.2d at 226. In light of decedent's 40 plus years of exposure to many different sources of asbestos products, and the lack of evidence linking regular and frequent asbestos exposure specifically to GE products, plaintiff has failed to prove a prima facie case against GE.

## III. CONCLUSION

For the foregoing reasons, this court's order granting summary judgment in favor of defendant GE should be affirmed.