J-A01026-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARC LEE LAMSON, AS SUCCEEDING EXECUTOR OF THE ESTATE OF LEON FRANKLIN LAMSON, JR., DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GEORGIA-PACIFIC LLC F/K/A GEORGIA-PACIFIC CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO BESTWALL GYPSUM COMPANY; BIRD, INCORPORATED (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO BIRD & SON, BIRD, INC. AND BIRD ROOFING PRODUCTS, INC.); CARRIER CORPORATION, INDIVIDUALLY AND D/B/A "BRYANT HEATING AND COOLING SYSTEMS"; FISMIDTH, INC., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO FULLER COMPANY AND TRAYLOR ENGINEERING & MANUFACTURING CO.; HANSON PERMANENTE CEMENT, INC. (F/K/A KAISER CEMENT CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO KAISER GYPSUM COMPANY, INC.); KAISER GYPSUM COMPANY, INC.; WEIL-MCLAIN COMPANY, INC.; OWENS-ILLINOIS, INC., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO OWENS-ILLINOIS GLASS COMPANY AND D/B/A O-I; UNION CARBIDE CORPORATION; YORK INTERNATIONAL CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CENTRAL ENVIRONMENTAL SYSTEMS, INC. F/K/A BORG-WARNER CENTRAL ENVIRONMENTAL SYSTEMS, INC; YORK-LUXAIRE, INC.; LUXAIRE INC. AND THE C.A. OLSEN MANUFACTURING COMPANY | |

AND D/B/A "MONCRIEF FURNACES";
ZURN INDUSTRIES INC. A/K/A AND
SUCCESSOR-BY-MERGER TO ERIE CITY
IRON WORKS AND D/B/A "KEYSTONE"
BRANDED PRODUCTS;  WEYERHAEUSER
COMPANY; DUGGAN & MARCON, INC.;
AND INTERNATIONAL PAPER COMPANY

　　　　　　　　Appellees　　　　　　　No. 1459 EDA 2018

Appeal from the Order Entered April 13, 2018
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 00073, April Term 2015

BEFORE:  OTT, STABILE, AND MCLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:　　　　　　　**FILED MAY 22, 2019**

Appellant, Marc Lee Lamson, succeeding executor of the estate of Leon Franklin Lamson, deceased, appeals from an order granting summary judgment to Appellees, International Paper Company ("IP") and Weyerhaeuser Company, in this asbestos exposure action.  The trial court concluded that Appellant[1] failed to demonstrate he was exposed to asbestos from fire doors manufactured by Appellees.  We hold that Appellant submitted sufficient evidence to create a genuine issue of material fact on this question.  Accordingly, we reverse.

Appellant worked as a carpenter at DuPont in Gibbstown, New Jersey from 1962 to 1967 and at the Philadelphia Navy Yard from 1967 to 1971.  He

---

[1] For the sake of convenience, we will refer to the decedent as "Appellant."

- 2 -

became an inspector at the Navy Yard in 1971 and then a general foreman in 1981. He retired in 1994.

Appellant alleged that he regularly installed and repaired fire doors during his employment as a carpenter at DuPont and the Navy Yard. Fire doors served as emergency exit doors and operated on fuses that detected heat in the event of a fire and shut automatically to prevent the fire from spreading. Appellant worked with fire doors frequently because there were thousands of them throughout the Navy Yard. Lamson dep., 6/6/15, at 55. The two most common brands of fire doors were from U.S. Plywood (IP's predecessor) and Weyerhaeuser. *Id.* at 57-58. Appellant "constantly" repaired fire doors because they were "old and coming apart." *Id.* at 51-52. He also installed and removed the doors, often with a saw. *Id.* at 52-55. Appellant had to cut fire doors down and insert new pieces of wood in the doors to make them usable, a labor-intensive job. *Id.* The job was dusty as well, particularly when he used a saw to trim the door, or drilled through the fire door to install wooden pieces, or sanded fire doors with a sanding block or power sander. Specifically, Appellant testified:

Q. When you were cutting these old fire doors with a saw, did that create dust?

A. Yes.

Q. When you would sand these old fire doors, would that make dust?

A. Yes, it would.

*Id.* at 55-56.  He further testified:

Q. [W]hat type of drilling did you have to do?  Did you have to drill through the wood or did you have to drill through the door itself or –

A. Drill through the wood into the door.

Q. Did that create dust?

A. Sure.  A little bit.

Q. How about when you used the skill saw to trim the door, did that create dust?

A. Yes.

\* \* \*

Q. Okay.  Did you have to do any additional drilling or were the holes already predrilled?

A. We had to - we had to redrill.

Q. Okay, and where did you drill, through the door or through that new piece of wood that you installed?

A. Both.

\* \* \*

Q. Did that create dust?

A. A little bit.

*Id.* at 346, 348, 349.

Another witness, Charles Boehmer, worked side by side with Appellant at the Navy Yard as a carpenter.  Boehmer dep., 5/10/17, at 8.  Boehmer worked with fire doors, which he described as thick doors insulated with asbestos to prevent fire from moving from one room to the next.  *Id.* at 33-

- 4 -

34. Weyerhaeuser was one of the manufacturers of fire doors with which Boehmer worked. *Id.* at 36. Boehmer recalled that Appellant worked with fire doors. *Id.* at 35-36. Boehmer concurred with Appellant that installing a fire door was one of the toughest jobs a carpenter had, because the door had to be shaped to fit perfectly within the door frame. *Id.* at 34. A carpenter would have to machine the sides, top and bottom of the fire door in order for it to fit in the door frame. *Id.* at 36-37.

Both IP and Weyerhaeuser admitted that some of their fire doors contained asbestos. IP's corporate designee stated in IP's answers to interrogatories:

> Based upon information and belief, some panels and fire rated doors had cores containing asbestos, which were manufactured at a facility in Algoma, Wisconsin. The doors and panels containing asbestos cores were manufactured at certain times beginning in approximately 1947 until the facility was closed in December of 1976.

R. Tab 47, Exhibit 4 at 2. Ronald Koepke, general foreman of Weyerhaeuser's mineral core manufacturing operation from 1971 to 1976 and superintendent of the area where fire doors were manufactured from 1976 to 1979, submitted an affidavit reflecting that from 1960 to 1978, Weyerhaeuser manufactured both asbestos-containing and non-asbestos-containing fire doors. Weyerhaeuser's Motion For Summary Judgment, exhibit E.

Dr. Murray Finkelstein, an epidemiologist and physician with experience in occupational and environmental medicine, prepared an expert report based on Appellant's and Boehmer's deposition testimony. Dr. Finkelstein opined

that Appellant experienced regular and proximate exposures to visible dust from Appellees' asbestos-containing fire doors, and these exposures were a substantial contributing cause of his mesothelioma.

Appellant filed suit against Appellees and other defendants along with a jury demand. Following discovery, the trial court granted Appellees' motions for summary judgment. Appellant filed a timely appeal following the conclusion of proceedings against other defendants. Without requesting a Pa.R.A.P. 1925(b) statement of issues raised on appeal, the trial court filed an opinion explaining its grounds for granted summary judgment to Appellees. The court stated:

> Appellant has not presented sufficient evidence that [he] was exposed to asbestos from fire doors manufactured, supplied and/or distributed by Appellees. Even assuming *arguendo* that the fire doors [Appellant] worked on contained asbestos, the asbestos would have been in the core of the fire doors. Both [Appellant] and [Boehmer] consistently testified that as carpenters, their work on fire doors involved sawing, planing, and sanding the edges, not the core, of the fire doors. Those edges were made of wood, and Appellant has produced **no evidence** that wood was treated with asbestos. Moreover, Appellant has produced **no evidence** [that he] ever disturbed the asbestos-containing core material in any of the fire doors he worked with, much less installed, repaired, or replaced such asbestos-containing core material.

Pa.R.A.P. 1925(a) Opinion, 8/3/18, at 18-19 (emphasis in original).

Appellant raises the following issues in this appeal:

> 1. Did the trial court abuse its discretion or commit an error of law in granting [Weyerhaeuser] summary judgment against Appellant, even though Appellant's proffered evidence establishes, at a minimum, the existence of a material fact

- 6 -

question on the element of proof—exposure—challenged by [Weyerhaeuser's] summary judgment motion?

2. Did the trial court abuse its discretion or commit an error of law in granting [IP] summary judgment against Appellant, even though Appellant's proffered evidence establishes, at a minimum, the existence of a material fact question on the element of proof—exposure—challenged by [IP's] summary judgment motion?

Appellant's Brief at 5.

When we review a challenge to the entry of summary judgment,

[we] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. See Pa.R.C.P. No. 1035.2. The rule [provides] that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***E.R. Linde Const. Corp. v. Goodwin***, 68 A.3d 346, 349 (Pa. Super. 2013).

A court reviewing the propriety of a summary judgment motion must be mindful that a jury may not be permitted to reach its verdict on the basis of speculation or conjecture. ***InfoSAGE, Inc. v. Mellon Ventures, L.P.***, 896 A.2d 616, 626 (Pa. Super. 2006).

To defeat a motion for summary judgment in an asbestos case, the plaintiff must prove that he inhaled asbestos fibers shed by the specific manufacturer's product. *Eckenrod v. GAF Corp.*, 544 A.2d 50, 52 (Pa. Super. 1988). The plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use. *Coward v. Owens-Corning Fiberglas Corp.,* 729 A.2d 614, 622 (Pa. Super. 1999). He need not, however, demonstrate the specific level or duration of his exposure. *Id.* "Minimal or incidental exposure to the defendant's products may be a substantial contributing factor in causing a harmful result." *Id.* at 625.

> At the summary judgment stage in asbestos actions, courts should
>
> make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury.

*Gregg v. VJ Auto Parts, Inc.*, 943 A.2d 216, 225 (Pa. 2007). *Gregg* adopted a flexible approach concerning the sufficiency of product identification evidence and frequency, regularity and proximity exposure criteria. The *Gregg* Court cautioned that

> these criteria do not establish a rigid standard with an absolute threshold necessary to support liability. Rather, they are to be applied in an evaluative fashion as an aid in distinguishing cases in which the plaintiff can adduce evidence that there is a sufficiently significant likelihood that the defendant's product caused his harm, from those in which such likelihood is absent on account of only casual or minimal exposure to the defendant's product. Further, . . . the application of the test should be tailored

to the facts and circumstances of the case, such that, for example, its application should become "somewhat less critical" where the plaintiff puts forth specific evidence of exposure to a defendant's product. Similarly, . . . the frequency and regularity prongs become "somewhat less cumbersome" in cases involving diseases that the plaintiff's competent medical evidence indicates can develop after only minor exposures to asbestos fibers.

*Id.* at 225; *see also Linster v. Allied Signal, Inc.*, 21 A.3d 220, 224 (Pa. Super. 2011) ("the frequency and regularity prongs become less cumbersome when dealing with cases involving diseases, like mesothelioma, which can develop after only minor exposures to asbestos fibers").

Appellees argue that the trial court properly granted summary judgment for three reasons: (1) Appellant failed to demonstrate that he worked on fire doors manufactured by Appellees, (2) even if Appellant worked on fire doors made by Appellees, he failed to demonstrate that they contained asbestos, and (3) even if they contained asbestos, the type of work Appellant performed did not expose him to asbestos. We conclude that Appellant presented sufficient evidence on each point to survive summary judgment.

We begin by examining whether the evidence, viewed in the light most favorable to Appellant, demonstrates that he worked with fire doors manufactured by IP and Weyerhaeuser. Appellant's testimony establishes that he worked as a carpenter for nine years at DuPont and the Navy Yard and then worked at the Navy Yard for two more decades as an inspector and general foreman. As a carpenter, he had considerable experience repairing and installing fire doors, and as an inspector and general foreman, he had

considerable experience supervising other carpenters.  Boehmer, Appellant's co-worker and fellow carpenter, corroborated Appellant's testimony.  Boehmer frequently worked with fire doors and recalled that Appellant worked with them as well when he was a carpenter.   Moreover, Appellant testified that the two most common brands of fire doors came from Weyerhaeuser and U.S. Plywood, IP's predecessor.  Boehmer confirmed that Weyerhaeuser supplied fire doors to the Navy Yard.  Viewed collectively, Appellant's and Boehmer's testimony demonstrates that Weyerhaeuser and U.S. Plywood supplied fire doors to DuPont and the Navy Yard, and that Appellant repaired and/or installed these fire doors as a carpenter at DuPont and the Navy Yard.  We acknowledge that neither Appellant nor Boehmer specified what **number** of Weyerhaeuser or U.S. Plywood fire doors Appellant worked on or **the length of time** that Appellant worked on these doors.  These omissions, however, go to the weight and credibility of Appellant's and Boehmer's testimony, issues that have no place at summary judgment.  Such considerations are solely for the factfinder to resolve at trial.  ***Estate of Hunter***, 205 A.2d 97, 102 (Pa. 1964) ("the credibility of witnesses, professional or lay, and the weight to be given to their testimony is strictly within the proper province of the trier of fact").

Next, we address whether the evidence, construed in the light most favorable to Appellant, demonstrates that the fire doors on which he worked contained asbestos.  Relying heavily on this Court's recent decision in ***Krauss***

***v. Trane U.S. Inc.***, 104 A.3d 556 (Pa. Super. 2014), Appellees argue that Appellant failed to furnish sufficient evidence on this point to create a material issue of fact. We disagree. Unlike the asbestos victim in ***Krauss***, Appellant produced sufficient evidence to survive summary judgment.

In ***Krauss***, this Court affirmed an order granting summary judgment against the decedent's estate and in favor of several asbestos manufacturers. The decedent and one of his co-workers submitted affidavits asserting that various products manufactured by the manufacturers were present at jobsites where the decedent worked between 1978 and 1983. We held that the affidavits failed to establish with any certainty that the products contained asbestos. For example, the co-worker averred, based on his "knowledge and belief," that "all of the boilers, turbines and pumps" identified in his affidavit were insulated with asbestos. ***Id.*** at 567. He failed, however, to provide specific evidence in support of this averment. ***Id.*** We reasoned that a lay witness such as the co-worker lacked sufficient experience or specialized knowledge to offer a technical opinion regarding the presence of asbestos in the workplace. ***Id.*** Neither did the manufacturers' answers to interrogatories establish that their products contained asbestos. One manufacturer, General Electric ("GE"), denied manufacturing any turbines used at the jobsites, and the estate failed to rebut this assertion. ***Id.*** at 575. While GE admitted that a "small percentage" of electrical wires and cables contained a form of asbestos, this did not raise any claim against GE because another entity

(WCBD) manufactured those products, and because there was no evidence that the decedent was exposed to those products. *Id.*

There was one additional deficiency in the decedent's deposition testimony in *Krauss*. He testified that his "overall job" was "very dusty," but he failed to attribute the dust to equipment manufactured by the defendants. *Id.* at 573.

The present case is different. First, while the estate in *Krauss* failed to identify which product or products created dust at the decedent's jobsites, Appellant demonstrated that work on a specific class of items—fire doors—created dust. Further, as discussed above, fire doors manufactured by Appellees were installed at DuPont and the Navy Yard. Viewed as a whole, this evidence demonstrates that Appellant's work on fire doors manufactured by Appellees generated dust. Second, the estate in *Krauss* based its claim that the fire doors contained asbestos on lay testimony from the decedent's co-worker. Here, Appellant did not rely on lay testimony from Appellant or his co-worker, Boehmer. Instead, Appellant obtained admissions from Appellees themselves that their fire doors contained asbestos. Weyerhaeuser's corporate designee admitted having personal knowledge that some of Weyerhaeuser's fire doors manufactured before or during Appellant's employment at DuPont and the Navy Yard contained asbestos. IP admitted in its answers to interrogatories that some fire doors manufactured by U.S. Plywood before or during Appellant's employment at DuPont and the Navy

Yard contained asbestos. We realize Appellees did not admit that every fire door they manufactured contained asbestos; nor did Appellant demonstrate that every fire door he worked on contained asbestos. Nevertheless, Appellant did not need to demonstrate that every fire door contained asbestos in order to survive summary judgment. As a victim of mesothelioma, he needed only to present evidence that asbestos was present in **some** fire doors manufactured by Appellees. *Gregg*, 943 A.2d at 225 (threshold for regularity and frequency of exposure becomes less cumbersome in case involving mesothelioma, which can develop after only minor exposure to asbestos). Appellees certainly can argue during trial that Appellant failed to show that all of Appellees' fire doors contained asbestos, but this argument goes to the weight and credibility of the evidence, not its legal sufficiency. *Hunter*, 205 A.2d at 102.

Finally, Appellees argue that even if their fire doors contained asbestos, Appellant's work on the fire doors did not generate asbestos-laden dust. We disagree. Appellant testified that he drilled or sawed into fire doors. The inference arises that Appellant penetrated the asbestos core of the fire doors by performing these acts, thus generating dust containing asbestos particles.

For these reasons, we conclude that the trial court erred in granting summary judgment to Appellees. We reverse the trial court's order and remand for trial.

Order reversed.  Case remanded for further proceedings.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/19